UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LORRAINE D.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:18-cv-01944-JPH-TAB |
| | ) |
| ANDREW M. SAUL Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Lorraine D. seeks judicial review of the Social Security Administration's decision denying her petition for Disability Insurance Benefits and Supplemental Security Income. She argues that the ALJ's decision is unsupported by substantial evidence because, in determining her Residual Functional Capacity ("RFC"), the ALJ: (1) gave too little weight to her treating physician's opinion, and (2) cherry-picked medical evidence from an evaluating psychologist's opinion. *See* dkt. 14 at 11–17. For the reasons that follow, the decision is **AFFIRMED**.

**I.
Facts and Background**

Plaintiff was 42 years old at the alleged onset date of her disability. Dkt. 8-3 at 2. She had completed twelfth grade and worked in the past as a

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

babysitter and in retail.  Dkt. 8-6 at 15.  In 2014 and 2015, Plaintiff was evaluated and found to have chronic knee and back pain, anxiety, depression, and arthritis.  Dkt. 8-7 at 3, 7, 44.  Those conditions caused limitations in sitting, standing, walking, lifting, memory, and attention.  *Id.* at 3, 10, 45; dkt. 8-9 at 25.

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income in November 2014 with an alleged onset date in March 2014.  Dkt. 8-3 at 3; dkt. 8-2 at 12.  Plaintiff's application was initially denied on January 22, 2015, dkt. 8-4 at 2, and on reconsideration on August 31, 2015, dkt. 8-4 at 14.  Administrative Law Judge Gladys Whitfield held a hearing in May 2017, dkt. 8-2 at 39, and the next month issued a decision denying Plaintiff's claims, dkt. 8-2 at 12–25.  The Appeals Council denied review in June 2018.  Dkt. 8-2 at 2–7.  Later that month, Plaintiff brought this action asking the Court to review the denial of benefits under 42 U.S.C. § 405(g).  Dkt. 1.

In her decision, the ALJ followed the five-step sequential evaluation in 20 C.F.R. § 404.1520(a)(4) and concluded that Plaintiff was not disabled.  Dkt. 8-2 at 12–25.  Specifically, the ALJ found that:

- At Step One, Plaintiff had not engaged in substantial gainful activity[2] since the alleged onset date.  Dkt. 8-2 at 15.

- At Step Two, she had "the following severe impairments: obesity, degenerative disc disease of the lumbar spine, inflammatory

---

[2] Substantial gainful activity is defined as work activity that is both substantial (involving significant physical or mental activities) and gainful (usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

2

   arthritis/osteoarthritis of the left knee, patella tendonitis of the left knee, chondromalacia of the left knee, diverticulitis/gastritis, essential hypertension, dysthymic disorder, depression, anxiety, and posttraumatic stress disorder." Dkt. 8-2 at 15.

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Dkt. 8-2 at 16.

- After Step Three but before Step Four, she had the RFC "to perform light work . . . except she can lift/carry up to 20 pounds occasionally and 10 pounds frequently; she can sit for up to six hours and can stand/walk up to six hours, each in an eight-hour workday; she should have the option to alternate positions for one to two minutes every 30 minutes; she can never climb ladders, ropes, or scaffolds, but she can occasionally balance, stoop, crouch, crawl, kneel, and climb ramps or stairs; she should avoid commercial driving; she is limited to simple, routine and repetitive tasks; she should not be required to perform fast-paced production, tandem tasks, or teamwork; she can have occasional interaction with the public, co-workers, and supervisors." Dkt. 8-2 at 18.

- At Step Four, Plaintiff "is unable to perform any past relevant work." Dkt. 8-2 at 22.

- At Step Five, considering Plaintiff's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy" that she can perform. Dkt. 8-2 at 23.

## II.
## Applicable Law

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts." *Id.* at 217. First, it requires an inability to engage in any substantial gainful activity. *Id.* And second, it requires a physical or mental impairment that explains the inability and "has lasted or can be expected to last . . . not less than 12 months." *Id.* "The standard for disability claims under the Social Security Act

3

is stringent." *Williams-Overstreet v. Astrue,* 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* at 274.

When an applicant seeks judicial review, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In evaluating the evidence, the Court gives the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong." *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that

the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g). The burden of proof is on the claimant for Steps One through Four, but shifts to the Commissioner at Step Five. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the benefit denial. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically appropriate. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III.
### Analysis

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence because, in determining her RFC between Step 3 and Step 4, the ALJ:

5

(1) gave her treating physician's opinion too little weight, and (2) cherry-picked medical evidence from an evaluating psychologist's opinion.  *See* dkt. 14 at 11–17.

### A.   The ALJ's Evaluation of the Treating Physician's Opinion

Plaintiff argues that in determining her RFC, the ALJ did not properly evaluate the opinion of her treating physician, Dr. Woodall.  Dkt. 14 at 11–15.  She contends that the ALJ was required to give his opinion increased weight, but instead "broadly dismisse[d]" his conclusions about Plaintiff's abilities and assumed that his opinion was "completed as an accommodation."  *Id.* at 13.  The Commissioner responds that the ALJ reasonably gave the opinion little weight and at least "minimally articulated" her reasons for doing so as required.  Dkt. 16 at 8–11.

Opinions from treating physicians "[g]enerally" receive "more weight."  20 C.F.R. § 404.1527(c)(2).[3]  "An ALJ who chooses to reject a treating physician's opinion must provide a sound explanation for the rejection."  *Jelinek v. Astrue, 662 F.3d 805, 811 (7th Cir. 2011).*  And "[w]hen an ALJ decides to favor another medical professional's opinion over that of a treating physician, the ALJ must provide an account of what value the treating physician's opinion merits."  *Id.*  "On judicial review, a court will uphold the Commissioner's

---

[3] This regulation applies to claims filed before March 27, 2017, so it applies here.  20 C.F.R. § 404.1527.  It also requires ALJs to give a treating physician's opinions "controlling weight" if they are "well-supported by medically appropriate clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] record."  20 C.F.R. § 404.1527(c)(2).  Plaintiff does not argue that Dr. Woodall's opinion is entitled to controlling weight.  *See* dkt. 14 at 12–13.

6

decision if the ALJ applied the correct legal standards and supported [her] decision with substantial evidence." *Id.* The Court "limit[s] [its] review to the reasons articulated by the ALJ in the written decision." *Id.*

Here, Dr. Woodall's opinion was that Plaintiff could not work because she wasn't able to do any lifting, pushing, pulling, stooping, or bending, or any prolonged walking, standing, sitting, or climbing:

> St. Vincent MEDICAL GROUP
> John W. Woodall, MD
> Lic# 01022907 -- DEA# AW4927057 -- NPI# 1639120256
> 141 W. 22nd Street, Suite 215 - Anderson, IN 46016
> (765) 644-3573 - Fax: (765) 646-8617
>
> Name LORRAINE DAVIS
> Date 8-25-15
>
> This patient is unable to work. She is unable to do any lifting, pushing, pulling, stooping or bending or prolonged walking, standing, sitting or climbing.
>
> Dispense as Written — May Substitute
> Prescription is void if more than one (1) prescription is written per blank

Dkt. 8-9 at 35; *see* dkt. 8-2 at 20. The ALJ gave "little weight" to this opinion for two reasons. Dkt. 8-2 at 20. First, because it "include[d] only conclusions regarding functional limitations without any rationale for those conclusions," so it "appear[ed] to have been completed as an accommodation" for Plaintiff. *Id.* And second, it was not clear that Dr. Woodall was familiar with the relevant definition of "disability," so the ALJ found it "possible that the doctor was referring solely to an inability to perform [Plaintiff's] past work." *Id.* at 20–21.

Plaintiff attacks the ALJ's first reason by contending that Dr. Woodall's opinion was supported by his treating notes and by the record as a whole, including medical records from other doctors. Dkt. 14 at 13. In support, she

7

cites records showing that Dr. Woodall referred her for treatment of several conditions.  Dkt. 8-8 at 17 (noting a motorcycle accident, arthritis, and chronic lower back pain), 20–27, 60–63 (noting a cardiac history, diverticulitis, lower back pain, rheumatoid arthritis, and arthritis); dkt. 8-9 at 11–23, 56 (noting acute renal failure, prerenal azotemia, acute gastroenteritis, hypertension, arthritis, chronic low back pain, left knee pain, anxiety, and depression); dkt. 8-10 at 5, 21–23, 30 (noting diarrhea, severe acute gastritis, and anxiety).  But Plaintiff merely cites those records; she does not explain how they support Dr. Woodall's opinion or what conclusions the ALJ should have drawn from them. Dkt. 14 at 13.  And while those records confirm Plaintiff's medical conditions— which the ALJ recognized, dkt. 8-2 at 15—they do not say that those conditions limit her in ways that would prevent her from working.

Because those records do not support Dr. Woodall's opinion, they also do not undermine the ALJ's conclusion that the opinion "appear[ed] to have been completed as an accommodation" for Plaintiff.  Dkt. 8-2 at 20.  Plaintiff argues that the ALJ erred because no regulation allowed her to draw such a conclusion.  Dkt. 14 at 13–14.  But ALJs may reject treating physicians' opinions if they give a "sound explanation" for doing so.  *Jelinek*, 662 F.3d at 811.  The ALJ did so here by following the treating-physician regulation and explaining that Dr. Woodall's opinion was "without any rationale for [its] conclusions."  Dkt. 8-2 at 20; *see* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion").

8

Moreover, ALJs may make credibility determinations, which will be reversed only if they are "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). The ALJ here made such a determination, recognizing that "it is not unheard of that a personal physician 'might have been leaning over backwards to support the application for disability benefits.'" *Schenk v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004).

Plaintiff does not address the ALJ's second reason for giving Dr. Woodall's opinion little weight—that it wasn't clear that he was familiar with the relevant definition of "disability," so it was "possible that [he] was referring solely to an inability to perform [Plaintiff's] past work." Dkt. 8-2 at 20–21. This bolsters the ALJs first reason for giving Dr. Woodall's opinion little weight. The opinion is not tied to any regulation or social security definitions, does not incorporate any medical records, and provides no context to clarify the scope of the opinion that Plaintiff couldn't work. *See* dkt. 8-9 at 35.

In short, the ALJ gave the required "sound explanation" for giving Dr. Woodall's opinion little weight. *Jelinek*, 662 F.3d at 811. There is no reversible error in the ALJ's evaluation of the treating physician's opinion.

### B. The ALJ's Evaluation of Dr. Halmi's Opinion

In determining Plaintiff's RFC, the ALJ evaluated Dr. Halmi's psychological opinion. Dkt. 8-2 at 21. The ALJ summarized Dr. Halmi's conclusion as Plaintiff having "the capacity to understand, remember, and carry out simple instructions" but also "some limitations in concentration, social interaction, and adaptation." *Id.* Plaintiff argues that the ALJ's

9

summation is a misrepresentation, and that the ALJ cherry-picked facts from Dr. Halmi's opinion in determining Plaintiff's RFC. Dkt. 14 at 15–16. The Commissioner responds that the ALJ properly summarized and accounted for Dr. Halmi's opinion. Dkt. 16 at 11–12.

The ALJ must "adequately discuss[ ]" the issues, building a "logical bridge from the evidence to [her] conclusion." *Pepper v. Colvin,* 712 F.3d 351, 362 (7th Cir. 2013). "It is not enough to address mere portions of a doctor's report." *Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009). But the ALJ is not required to perform "a complete written evaluation of every piece of evidence," or "discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence." *Pepper,* 712 F.3d at 362–63.

Plaintiff claims that several findings from Dr. Halmi's opinion were "not properly represented" in the ALJ's evaluation. Dkt. 14 at 17. Those findings are that:

- Plaintiff could repeat two digits forward but not backward;
- Plaintiff needed two tries to immediately repeat four words, and scored "severely impaired" on a test that required her to repeat them after five minutes;
- Plaintiff's recall of remote personal dates and events was poor;
- Plaintiff ended the examination before some assessments because she was hysterical and crying uncontrollably;
- Plaintiff's attention and concentration would cause significant problems completing simple tasks for extended periods of time; and

- Plaintiff's depression and anxiety would cause significant problems interacting appropriately with coworkers, supervisors, and the public, and would cause difficulty responding to changes in her work routine.

*Id.* at 15–16.

But Plaintiff has not shown that the ALJ ignored any of those findings. *See Myles*, 582 F.3d at 678. Nor does she explain how those findings contradict the ALJ's conclusions. *See Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014). Instead, the ALJ's general summary accounts for Dr. Halmi's specific findings. As the ALJ recognized, those findings add up to "some deficits in short-term memory" and "some limitations in concentration, social interaction, and adaptation." Dkt. 8-2 at 21.

Moreover, the ALJ acknowledged the limitations that Dr. Halmi found. She noted Plaintiff's "moderate limitations" in understanding and remembering information, and in interacting with others. Dkt. 8-2 at 17. And she concluded that Plaintiff should not be required to perform tandem tasks or teamwork, and should have only "occasional interaction with the public, co-workers, and supervisors." *Id.* at 18. So even if the ALJ had ignored Dr. Halmi's findings that Plaintiff cites, they do not contradict the ALJ's conclusions and therefore are not evidence of cherry-picking evidence. *See Sims v. Barnhart*, 309 F.3d 424, 431 (7th Cir. 2002) (holding that the plaintiff

11

did not show a lack of substantial evidence to support the conclusion when the ALJ acknowledged plaintiff's agoraphobia and depression in the analysis).[4]

In short, the ALJ built a logical bridge from the evidence to her conclusions, so substantial evidence supports her decision. See *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) ("[T]he ALJ need not mention every strand of evidence in her opinion, but only enough to build an accurate and logical bridge from evidence to conclusion.").

## IV.
## Conclusion

The Court **AFFIRMS** the ALJ's decision denying the Plaintiff benefits. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 5/18/2020

                                          James Patrick Hanlon
                                          United States District Judge
                                          Southern District of Indiana

Distribution:

Christie O'Brien Tate
SOCIAL SECURITY ADMINISTRATION
christie.tate@ssa.gov

Edward A. Wicklund
OLINSKY LAW GROUP
twicklund@windisability.com

---

[4] Plaintiff briefly argues, without supporting citations to the record or to case law, that the ALJ failed to incorporate the limitations that Dr. Halmi identified into her hypothetical to the vocational expert. Dkt. 14 at 17. To the extent this argument differs from Plaintiff's argument that the ALJ cherry-picked evidence from Dr. Hamli's opinion, it is waived. See *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013).

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

13